# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**MELVIN JACKSON,**

    **Plaintiff,**

**v.**                                                                                                       Case No: 5:18-cv-53-Oc-PRL

**UNITED STATES OF AMERICA,**

    **Defendant.**

## ORDER

In this action, Plaintiff alleges that the United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), because medical staff at FCC Coleman were negligent in the treatment of his ruptured Achilles tendon. The United States moves for summary judgment on Plaintiff's claims and seeks to exclude the testimony of Plaintiff's medical expert, arguing that his testimony is unreliable. For the reasons set forth below, the Court agrees with the government.

    **I.**    **Background**

The facts are largely undisputed. (*See* Doc. 40 at 2-6, Doc. 42 at 1-3). On June 26, 2015, Plaintiff injured his Achilles tendon while playing basketball at FCC Coleman. He was seen, that same day, by a BOP Physician's Assistant ("PA"). (Doc. 40-2 at 51-54). Based upon his physical findings, the PA diagnosed Plaintiff with an Achilles tendon rupture, applied an orthoglass split to Plaintiff's lower left leg to immobilize his ankle, and ordered ibuprofen for pain management and gave Plaintiff crutches to avoid weight bearing. The PA also submitted an orthopedic surgery consult for further evaluation and treatment recommendations.

On June 29, 2015, a BOP physician reviewed Plaintiff's case and ordered an MRI of the left ankle. (Doc. 40-2 at 50). On July 11, 2015, Plaintiff had an MRI of his left ankle, which

revealed a "full-thickness rupture of the proximal Achilles tendon with 1 cm retraction." (Doc. 40-2 at 101). The MRI report was read by BOP medical staff on July 16, 2015.

On July 20, 2015, the PA saw Plaintiff again and confirmed that he had been keeping the splint in place and was avoiding putting weight on the ankle as instructed. (Doc. 40-2 at 47). The PA explained the MRI result and instructed Plaintiff to continue to avoid putting any weight on his ankle. It was noted that the ortho consult had been approved and was pending urgent scheduling.

On August 20, 2015, Plaintiff saw the PA again and was instructed to continue the treatment plan until he saw the orthopedist. (Doc. 40-2 at 45). On August 31, 2015, Plaintiff was seen by podiatrist Dr. Chad C. Watkins at the Musculoskeletal Institute. (Doc. 40-3 at 11-14). Dr. Watkins noted "patient is aware that the tendon appears to be filling in and does not appear as if surgical intervention is necessary." Dr. Watkins recommended that Plaintiff continue with conservative treatment and replaced his splint with a cast. Dr. Watkins ordered Plaintiff to follow up in two weeks.

Plaintiff returned for a follow up exam on September 21, 2015. (Doc. 40-3 at 8-10). Dr. Watkins noted that Plaintiff's Achilles tendon appeared to have healed nicely based upon clinical examination. He noted that Plaintiff understood that "the facility appear[ed] to have treated him appropriately by placing him in the splint and having him stay off of the foot."

On October 30, 2015, Dr. Watkins replaced Plaintiff's cast with a fracture boot. (Doc. 40-3 at 5-7). On December 1, 2015, Plaintiff had a follow-up appointment with a PA at FCC Coleman. (Doc. 40-2 at 27). The treatment plan was discussed with Plaintiff, which included a follow up appointment with Dr. Watkins. (Doc. 40-2 at 28).

On December 17, 2015, at his final appointment with Dr. Watkins, Plaintiff reported having trouble walking at that time. (Doc. 40-3 at 2-4). Dr. Watkins ordered Plaintiff to continue rehab and strengthening the leg on his own. Dr. Watkins did not recommend surgical intervention at that time and did not believe it would be necessary in the future. (Doc. 40-3 at 4). Dr. Watkins told Plaintiff that he could resume his normal activities.

On January 6, 2018, Plaintiff was transferred from FCC Coleman to FCC Butner. (Doc. 40-2 at 123). On April 5, 2016, Plaintiff was seen by a mid-level provider at FCC Butner for a scheduled sick call appointment. (Doc. 40-2 at 121). He denied any pain and requested physical therapy. On June 2, 2016 the physical therapist ("PT") at FCC Butner noted that Plaintiff had a normal gait. (Doc. 40-2 at 119). Plaintiff was directed to do stretching and strengthening exercises twice daily with a goal of returning to play basketball without pain or ankle dysfunction in 8-10 weeks. (Doc. 40-2 at 119-20).

On July 14, 2016, Plaintiff was seen again by the PT who noted that he was functioning at a high level with mostly resolved calf dysfunction. (Doc. 40-2 at 117-20). Plaintiff reported that he had been playing basketball, running and jumping without problems, except for not having as much of a push-off when jumping. He was discontinued from physical therapy and told to follow-up at sick call as needed.

On August 18, 2016, Plaintiff complained that prolonged standing caused swelling in his left ankle. (Doc. 40-2 at 115). An examination revealed full range of motion of the left ankle with no edema or tenderness. (Doc. 40-2 at 115). He was given a no prolonged standing restriction. (Doc. 40-2 at 116).

On September 6, 2016, Plaintiff reported to sick call and complained that he could not work on wet floors because it "easy to slip and reinjure" his left Achilles tendon. (Doc. 40-2 at 109).

The examination that day again revealed a full range of motion with no tenderness or inflammation. (Doc. 40-2 at 109). On September 16, 2016, Plaintiff complained that wearing boots hurt his left ankle so he was given permission to not wear boots. (Doc. 40-2 at 107-08).

Plaintiff was transferred from TCC Butner to USP McCreary in November 2016 and was screened by an RN who performed a medical history. (Doc. 40-2 at 107-10). Plaintiff denied any medical issues and did not report any pain.

On January 26, 2018, Plaintiff filed this action alleging that the BOP medical staff were negligent in treating his Achilles tendon rupture. The government, on the other hand, seeks to exclude the Plaintiff's expert and moves for summary judgment it its favor.

**II.     Standards**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries her burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray,* 461 F.3d 1315, 1320 (11th Cir. 2006). Affidavits submitted in relation to a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible under the Federal Rules of Evidence." *Josendis v. Wall to Wall Residence Repairs, Inc.,* 662 F.3d 1292, 1314–15 (11th Cir. 2011).

A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must

view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents,* 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 743 (11th Cir. 1996).

### III. Discussion

To support his medical negligence claim, Plaintiff relies on the opinion of his expert, Dr. Kirby. The United States has filed a *Daubert* motion arguing that Dr. Kirby is unqualified to provide an opinion on the standard of care for an Achilles tendon rupture. The United States argues that Dr. Kirby's opinions should be stricken, and that summary judgment should be entered for the United States, as Plaintiff will not have an expert to support his medical negligence claims. The United States further contends that even if Dr. Kirby's opinions are not stricken, he cannot establish that Plaintiff suffered any damages in this case by receiving conservative treatment rather than surgery.

### A. Daubert Motion

Rule 702 of the Federal Rules of Evidence, as explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The Eleventh Circuit requires trial courts acting as gatekeepers to engage in a "rigorous three-part inquiry" assessing whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the

evidence or to determine a fact in issue. *Hendrix ex rel. G.P. V. Evenflo Co, Inc.,* 609 F3d 1183, 1194 (11th Cir. 2010).

In response to the motions, Plaintiff has clarified that "Dr. Kirby is offering an opinion as to the deviation from the standard of care as to the conduct of the correctional facility personnel, not that of the orthopedic surgeon." (Doc. 41 at 3). Specifically, Dr. Kirby opined that the BOP medical staff deviated from the standard of care by not having Plaintiff seen by an orthopedist within several weeks of the injury so that he could have the benefit of surgical intervention. Plaintiff generally argues that Dr. Kirby is "qualified as to the standard of care in treating and diagnosing Achilles Tendon ruptures."

Dr. Kirby is an internist who deals with the prevention, diagnosis and treatment of adult diseases. (Deposition of Dr. Kirby, Doc. 51-9 at 4:14-25). He is not a surgeon, and has never performed a surgery of any kind, and specifically not surgery on an Achilles tendon rupture. (Kirby Depo. at 5:23-6:11). Dr. Kirby encounters Achilles tendon ruptures once to twice per year, and when he does, he immediately refers the patient out to either an orthopedic surgeon or a podiatrist who has the capability to surgically repair it. (Kirby Depo. at 43:1-5, 43:18-44:10). Thus, according to his own testimony, Dr. Kirby does not have experience treating an Achilles tendon rupture beyond an initial referral to an orthopedic doctor.

Given his limited experience – i.e., diagnosing Achilles tendon ruptures and referring patients to an orthopedic surgeon or podiatrist – Dr. Kirby's opinions regarding whether Plaintiff required surgery *and* the damages Plaintiff suffered as a result of receiving conservative treatment rather than surgery, are neither reliable nor helpful to the Court. Accordingly, they will be stricken.

**B. Summary Judgment Motion**

In analyzing a claim under the Federal Tort Claims Act, the court applies the law of the state where the alleged tort occurred. *Stone v. United States,* 373 F.3d 1129, 1130 (11th Cir. 2004). Here, Florida tort law applies because the alleged medical negligence occurred at FCC Coleman. *Id.*

To establish a claim for negligence under Florida law, a plaintiff must establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages. *Lewis v. City of St. Petersburg,* 260 F.3d 1260, 1262 (11th Cir. 2001); *Saunders v. Dickens*, 151 So.3d 434, 441 (Fla. 2014). That means Plaintiff must provide evidence that his injury was proximately caused by a breach of the prevailing professional standard of care—that is, the level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers. Fla. Stat. § 766.102(1) and § 766.102(3)(b).

Here, even if the BOP medical staff breached the standard of care by not having Plaintiff evaluated by an orthopedic surgeon within several weeks of his injury (as Dr. Kirby opined) (and assuming Plaintiff would have had surgery), Plaintiff has failed to offer reliable evidence that he suffered any damages as a result of receiving conservative treatment instead of surgery. Indeed, there is no dispute that through conservative treatment Plaintiff's Achilles tendon fully healed, there has been no re-rupture, and he returned to his normal activity such as playing basketball within one year after the injury. (Doc. 40-2 at 117, Doc. 40-3 at 4, Kirby Deposition at 59:11-60:1).

Nevertheless, in response to the motion for summary judgment, Plaintiff claims he suffered damages due to reduced range of motion and occasional "flare ups." (Doc. 42 at 2-3). However, it

is mere speculation that Plaintiff would have had better range of motion and fewer flare ups if he had received surgery. In order to establish causation, "the plaintiff must show that what was done or failed to be done probably would have affected the outcome. And the plaintiff must do so without an impermissible stacking of inferences." *Chiarino v. United States*, 189 F. Supp. 3d 1371, 1384 (S.D. Fla. 2016) (quoting *Santa Lucia v. LeVine*, No. 2D14–5011, 198 So.3d 803, 2016 WL 886384, at *4 (Fla.2d DCA Mar. 9, 2016)); *see also*, *Gooding v. University Hospital Bldg., Inc.,* 445 So.2d 1015 (Fla.1984) (a mere possibility of such causation is not enough; and where the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, the court has a duty to direct a verdict for the defendant). Plaintiff has simply failed to meet this burden.

Here, Plaintiff attempted to establish causation through Dr. Kirby, whose opinions as to those issues has been stricken. However, even if they were considered, they would be insufficient to establish the causation element since his opinion is speculative at best. Dr. Kirby opined that by relegating Plaintiff to the strict immobilization treatment model, it "precluded the improved functional outcome that one might have anticipated with surgical correction." (Doc. 52-1 at 13). This "mere possibility" that Plaintiff might have had a better result with surgery is insufficient to establish causation under Florida law. *Gooding*, 445 So.2d 1018.[1]

---

[1] Dr. Kirby acknowledged that decreased ankle motion was a potential complication of surgical repair of an Achilles tendon rupture. (Kirby Deposition at 54:18-55:22).

Because Plaintiff has presented no reliable evidence to demonstrate that he suffered damages because he received conservative treatment instead of surgery, plaintiff has not established a prima facie case of medical negligence. Accordingly, the United States' motion for summary judgment is granted. The Clerk shall enter judgment in favor of the United States and close the file.

**DONE** and **ORDERED** in Ocala, Florida on April 3, 2020.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties